Monica Pertea (030955)
David Johns (026893)
**ASPEY WATKINS & DIESEL, PLLC**
123 N. San Francisco Street, 3rd Floor
Flagstaff, Arizona 86001
Telephone: (928) 774-1478
MPertea@awdlaw.com
DJohns@awdlaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| New Parent World, LLC, a New Jersey for-profit corporation (d/b/a My Baby Experts),<br><br>Plaintiff,<br><br>vs.<br><br>True To Life Productions, Inc., an Arizona for-profit corporation; Brightcourse, LLC, an Arizona limited liability company; Heritage House '76, Incorporated, an Arizona for-profit corporation; Brandon Monahan, in his individual capacity,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**(Copyright Infringement, False Copyright Management, Breach of Contract, Unfair Competition, Breach of Covenant of Good Faith and Fair Dealing)**<br><br>**(Jury Trial Requested)** |

Plaintiff, New Parent World, LLC, d/b/a My Baby Experts, through counsel undersigned, hereby submits this Complaint against Defendants, True To Life Productions, Inc., Brightcourse, LLC, Heritage House '76, Incorporated, and Brandon Monahan, and alleges as follows:

**JURISDICTION AND VENUE**

1. This Complaint alleges claims for Removal of Copyright Information and False Copyright Management Information (17 U.S.C. § 1202 et. seq), Copyright

- 1 -

1. Infringement (17 U.S.C. § 501 et. seq.), False Designation of Origin (15 U.S.C. § 1125 et. seq.) and Arizona common law claims for Breach of Contract, Unfair Competition, and Breach of the Covenant of Good Faith and Fair Dealing, as more fully set forth below.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as a civil action arising under the laws of the United States. Pursuant to 28 U.S.C. § 1367(a), this Court retains supplemental jurisdiction over Plaintiff's common law claims, all of which arise from the same case or controversy.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2). The actions upon which Plaintiff bases its Complaint occurred within the District of Arizona. Additionally, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1). All defendants are residents of the District of Arizona.

**PARTIES**

4. Plaintiff New Parent World, LLC, d/b/a My Baby Experts, is a New Jersey limited liability company (hereinafter, "My Baby Experts") with a known place of business at 25 Westbury Drive, Sparta, NJ 07871.

5. Defendant True To Life Productions, Inc. is an Arizona for-profit corporation (hereinafter, "True To Life") with a known place of business at 261 S. 1st St E, Snowflake, AZ 85937.

6. Defendant Brightcourse, LLC is an Arizona limited liability company (hereinafter, "Brightcourse") with a known place of business at 2154 E. Spruce Drive, Chandler, AZ 85286.

7. Defendant Heritage House '76, Incorporated is an Arizona for-profit

- 2 -

corporation (hereinafter, "Heritage House") with a known place of business at 919 S. Main Street, Snowflake, AZ 85937.

8. Defendant Brandon Monahan is the Chairman of the Board of Directors and CEO of True To Life. Monahan is also President and CEO of Heritage House and, upon information and belief, is a resident of the State of Arizona.

## BACKGROUND

9. Plaintiff My Baby Experts has been in the business of creating important original content, including audio and audio-visual works, focused on teaching breastfeeding techniques and improved newborn care to new parents since at least the year 2004.

10. My Baby Experts' content is registered and protected under United States Copyright Law. My Baby Experts' copyright registrations applicable to the claims made herein are attached hereto as **Exhibit A**.

11. Beginning in 2010, Defendants began purchasing and distributing My Baby Experts' content in audio and DVD formats, including its DVDs entitled "Simply Breastfeeding, the Criso Breastfeeding Method" and "Breast Pumps and Briefcases, Breastfeeding for the Working Mom" (hereinafter, the "Intellectual Property").

12. On April 1, 2019, My Baby Experts entered into a Digital Content Rights Distribution and Royalty Agreement (the "Agreement") with Defendant True to Life for distribution of the Intellectual Property.

13. The Agreement provides that My Baby Experts, as Grantor, would license the rights to distribute its Intellectual Property via online streaming to True To Life, as Grantee.

14. The Agreement is for a term of two years, with an additional automatic renewal for one successive one-year term, unless terminated by either party not less than 90 days prior to renewal.

15. The Agreement grants True To Life limited "digital streaming rights for the audio, video and/or still image files" for the Intellectual Property in the United States and Canada "through the online subscription Service known as and accessible online at Brightcourse.com."

16. Pursuant to the Agreement, Defendant True To Life expressly undertook to safeguard My Baby Experts' content and to make it available only on a paid subscription basis for which royalties would be paid.

17. Specifically, Defendant True To Life represented and warranted that:

(a) Grantee must "…restrict access to the Property to customers of the Service who are accessing the Service on a trial or active subscription basis."

(b) "The Property shall not be stored in such a way that allows public access or download."

(c) Grantee must "…exercise the same degree of care" with respect to the Intellectual Property that Grantee exercises with respect to its "own proprietary information"; and

(d) Grantee must not allow My Baby Experts' content to be subject to any "third-party software designed to reproduce the video in downloadable format."

18. By its terms, the Agreement expired on March 31, 2022.

19. On July 20, 2022, Brandon Monahan provided email notice to My Baby

Experts that True To Life was seeking to terminate the Agreement. Monahan committed in that correspondence to "remove [My Baby Experts'] content from Brightcourse on November 17th, 2022" and represented that My Baby Experts would "…be paid full royalties for anyone who views [its] content."

20. Following Monahan's correspondence indicating True To Life's intent to terminate the Agreement, My Baby Experts discovered numerous violations of the Agreement, of the United States Copyright Law, and of the Arizona common law by the Defendants.

21. For instance, True To Life breached the Agreement by making My Baby Experts' Intellectual Property available for free on non-restricted online databases, including Rumble.com.

22. Rumble.com is a website repeatedly cited for circulating misleading or deceptive information. True To Life's publication of My Baby Experts' Intellectual Property on that website not only violated the terms of the Agreement as set forth in ¶ 15-17, *infra*, but it also undermined My Baby Experts' credibility and damaged My Baby Experts' reputation, content and business. Upon information and belief, True To Life and/or other Defendants may have intentionally distributed this content in such fashion with the intent to harm the marketability and credibility of My Baby Experts' content.

23. In multiple instances, Defendants removed My Baby Experts' copyright notice when it published My Baby Experts' copyrighted works on Rumble.com and Brightcourse.com.

24. Following termination of the Agreement, Defendants created infringing knockoff videos that are substantially similar to My Baby Experts' own video content,

- 5 -

and Defendants marketed those infringing videos in direct competition with My Baby Experts.

25. Integrally distributed with Defendants' audio-visual productions are various Fact Sheets, Discussion Questions, Literature Packs, Homework, and Worksheets. Defendants created these products by copying and transcribing, repeatedly word-for-word, My Baby Experts' copyrighted Intellectual Property.

26. Moreover, during the term of the Agreement, True To Life and/or other Defendants distributed Fact Sheets, Discussion Questions, Literature Packs, Homework, and Worksheets bearing Plaintiff's name, symbols, and/or trademarks. Upon information and belief, this false representation deceived potential buyers to believe that Defendants' product was that of, or endorsed by, My Baby Experts.

27. Defendants also added their own copyright symbols to their written works that were copied and transcribed from My Baby Experts' audio-visual Intellectual Property.

28. At least some of the differences that do exist between My Baby Experts' Intellectual Property, and Defendants' copied transcriptions thereof, include misleading and erroneous information.

29. Defendants' affiliation of My Baby Experts' work product with such misleading and erroneous information has harmed My Baby Expert's credibility and reputation.

30. Subsequently, Defendants removed My Baby Experts' name, symbols, and/or trademarks from their written materials. However, Defendants merely reworded the content of those products into colorable imitations of Plaintiff's own copyrighted

- 6 -

Intellectual Property, and distributed these products with their own trademarks, brands and copyright notices. Despite their attempts to convert these products into reworded knockoffs of My Baby Experts' Intellectual Property, Defendants' products still included word-for-word copied transcriptions of said Intellectual Property.

**COUNT 1: False Copyright Management Information – 17 U.S.C. § 1202(a)**

**(against all Defendants)**

31. Plaintiff incorporates the foregoing allegations herein as if restated in full.

32. Following termination of the Agreement, Defendants removed Plaintiff's copyright management information from Plaintiff's copyrighted Intellectual Property including, but not limited to, Plaintiff's copyrighted audio-visual works.

33. Defendants replaced Plaintiff's copyright management information with Defendant's own falsified copyright management information.

34. Defendants then distributed that content, bearing falsified copyright management information, without seeking or receiving permission to use Plaintiff's copyrighted content.

35. Defendants' falsification of copyright management information as to Plaintiff's copyrighted Intellectual Property has harmed Plaintiff's business, damaged Plaintiff's reputation, and caused confusion in the marketplace.

**COUNT 2: Removal of Copyright Management Information – 17 U.S.C. § 1202(b)**

**(against all Defendants)**

36. Plaintiff incorporates the foregoing allegations herein as if restated in full.

37. Following termination of the Agreement, Defendants intentionally removed copyright management information from Plaintiff's copyrighted Intellectual Property.

38. Defendants distributed that Intellectual Property, knowing that copyright management information had been removed or altered, without authorization from Plaintiff.

39. Defendants' unauthorized removal of Plaintiff's copyright management information has harmed Plaintiff's business, damaged Plaintiff's reputation, and caused deception and confusion in the marketplace.

## COUNT 3: Copyright Infringement – 17 U.S.C. § 501

### (against all Defendants)

40. Plaintiff incorporates the foregoing allegations herein as if restated in full.

41. By way of the Agreement, Defendants had access to Plaintiff's copyrighted Intellectual Property.

42. Defendants created and distributed Fact Sheets, Discussion Questions, Literature Packs, Homework, and Worksheets by copying and transcribing Plaintiff's copyrighted Intellectual Property such that they were identical or substantially similar to Plaintiff's copyrighted works.

43. Those Fact Sheets, Discussion Questions, Literature Packs, Homework, and Worksheets contained extensive content that was copied word-for-word from Plaintiff's copyrighted Intellectual Property.

44. Defendants distributed these products, containing word-for-word transcriptions and/or copies of Plaintiff's copyrighted Intellectual Property, without seeking or receiving permission to use Plaintiff's copyrighted Intellectual Property.

45. Defendants' infringement on Plaintiff's copyrighted Intellectual Property has harmed Plaintiff's business and damaged Plaintiff's reputation.

**COUNT 4: Copyright Infringement – 17 U.S.C. § 501**

**(against all Defendants)**

46. Plaintiff incorporates the foregoing allegations herein as if reinstated in full.

47. By way of the Agreement, Defendants had access to Plaintiff's copyrighted Intellectual Property.

48. Following termination of the Agreement, Defendants created infringing knockoffs of Plaintiff's video content.

49. Defendants marketed their infringing videos in direct competition with Plaintiff.

50. Defendants directly copied substantial portions of at least two videos licensed for streaming distribution under the Agreement, as well as other videos and Intellectual Property owned by Plaintiff.

51. Defendants' infringing videos are substantially similar to Plaintiff's copyrighted Intellectual Property.

52. Defendants' infringement of Plaintiffs' Intellectual Property, and marketing of their infringing knockoffs in competition with Plaintiff, has harmed Plaintiff's business and damaged Plaintiff's reputation.

**COUNT 5: Copyright Infringement – 17 U.S.C. § 501**

**(against all Defendants)**

53. Plaintiff incorporates the foregoing allegations herein as if restated in full.

54. By way of the Agreement, Defendants had access to Plaintiff's copyrighted Intellectual Property.

55. Following termination of the Agreement, Defendants continued to

distribute Plaintiff's copyrighted videos via the online streaming service known as "Rumble.com."

56. Defendants distributed Plaintiff's copyrighted audio-visual Intellectual Property without seeking or receiving permission to continue distributing Plaintiff's copyrighted content following expiration of the Agreement.

57. While Defendants made some (but not all) of the videos private, they never removed the infringing material from Rumble.com even after Plaintiff notified them of the copyright infringement. The infringing content was only removed after Plaintiff notified Rumble.com of the copyright violation.

58. The Agreement specifically and expressly prohibited the Grantee, True To Life, from distributing Plaintiff's copyrighted Intellectual Property in this publicly accessible manner.

59. Upon information and belief, Defendants unjustly profited from their unauthorized distribution of Plaintiff's copyrighted videos.

60. Defendants' unauthorized distribution of Plaintiff's copyrighted Intellectual Property has harmed Plaintiff's business and damaged Plaintiff's reputation.

### COUNT 6: Breach of Contract
**(against Defendant True To Life)**

61. Plaintiff incorporates the foregoing allegations herein as if restated in full.

62. The Agreement between Plaintiff and True To Life contains provisions that Defendants must "restrict access to the Property to customers of the Service who are accessing the Service on a trial or active subscription basis."

63. The Agreement further provides that the Intellectual Property "shall not be

stored in such a way that allows public access or download."

64. Moreover, the Agreement committed True To Life to "exercise the same degree of care" with regard to Plaintiff's Intellectual Property as True To Life would exercise with their own proprietary information, and that True To Life must not allow Plaintiff's Intellectual Property to be subject to any "third-party software designed to reproduce video in downloadable format."

65. True To Life breached the Agreement by uploading Plaintiff's Intellectual Property to "Rumble.com," without restriction only to customers who were accessing the content on a trial or active subscription basis and in a manner that the content was freely accessible by the public.

66. True To Life further breached the Agreement by failing to exercise due care with regard to protection of Plaintiff's Intellectual Property.

67. True To Life's breach of the Agreement has caused substantial harm to Plaintiff's business, profits, and the value of Plaintiff's Intellectual Property.

68. This matter arises out of contract, and Plaintiff is entitled to an award of attorneys' fees and costs pursuant to the Agreement and pursuant to A.R.S. §§ 12-341 & 12-341.01.

**COUNT 7: False Designations of Origin, False Descriptions, and Dilution –**

**15 U.S.C. § 1125**

**(against all Defendants)**

69. Plaintiff incorporates the foregoing allegations herein as if restated in full.

70. Following termination of the Agreement, Defendants continued to distribute Plaintiff's Intellectual Property, bearing Plaintiff's name, symbols, and/or

trademarks.

71.   Defendants distributed said Intellectual Property without seeking or receiving authorization from Plaintiff.

72.   For instance, Defendants published Plaintiff's Intellectual Property on Rumble.com, without permission and without restricting access to viewership.

73.   By publishing Plaintiff's Intellectual Property in a publicly accessible manner on Rumble.com, Defendants undermined both Plaintiff's credibility and the exclusivity of Plaintiff's products. Upon information and belief, Defendants may have intentionally distributed this content in such fashion with the intent to harm Plaintiff's marketability and credibility.

74.   Defendants' unauthorized distribution of Plaintiff's Intellectual Property, bearing Plaintiff's name, symbols, and/or trademarks constitutes a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact.

75.   The aforementioned unauthorized distribution of Plaintiff's branded content has caused confusion, mistake, and/or deception as to Defendants' affiliation with Plaintiff and has caused substantial harm to Plaintiff's reputation and business.

**COUNT 8: False Designations of Origin, False Descriptions, and Dilution –**

**15 U.S.C. § 1125**

**(against all Defendants)**

76.   Plaintiff incorporates the foregoing allegations herein as if restated in full.

77.   During the course of the Agreement, Defendants created Fact Sheets, Discussion Questions, Literature Packs, Homework, and Worksheets bearing Plaintiff's

name, symbols, and/or trademarks without authorization or license from Plaintiff to do so.

78. Defendants copied and transcribed the content of Plaintiff's audio-visual Intellectual Property into those products identified in the above paragraph without Plaintiff's permission.

79. Moreover, the differences that do exist between Defendants' written products and Plaintiff's Intellectual Property, from which its content was largely copied, include erroneous and misleading information.

80. By associating Plaintiff's name, symbols, and/or trademarks with their unauthorized Fact Sheets, bearing erroneous and misleading information intermingled with content copied from Plaintiff's audio-visual Intellectual property, Defendants harmed Plaintiff's reputation and credibility.

81. Defendants' unauthorized distribution of Plaintiff's Intellectual Property, bearing Plaintiff's name, symbols, and/or trademarks constitutes a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact.

**COUNT 9: Unfair Competition**

**(against all Defendants)**

82. Plaintiff incorporates the foregoing allegations herein as if restated in full.

83. During the course of the Agreement, Defendants created Fact Sheets, Discussion Questions, Literature Packs, Homework, and Worksheets, utilizing content copied word-for-word form Plaintiff's videos, and bearing Plaintiff's name, symbols, and/or trademarks, without authorization or license from Plaintiff. This practice led

customers to believe that Defendants' products were those of Plaintiff, and constitutes unlawful "palming off" of Plaintiff's Intellectual Property.

84. Following termination of the Agreement, Defendants continued to distribute Plaintiff's copyrighted Intellectual Property, bearing Plaintiff's name, symbols, and/or trademarks, again without authorization or license from Plaintiff.

85. Under Arizona common law, Defendants' unauthorized and unlicensed distribution of Plaintiff's Intellectual Property, bearing Plaintiff's name, symbols, and/or trademarks, both during and after the course of the Agreement, constitutes unlawful palming off of Plaintiff's products as Defendants' own.

86. Defendants' aforementioned unauthorized distribution induced buyers to believe that Defendants' product was that of Plaintiff.

87. Moreover, by publishing Plaintiff's Intellectual Property in a publicly accessible manner on Rumble.com, Defendants undermined both Plaintiff's credibility and the exclusivity of Plaintiff's products.

88. Defendants' unfair competition by way of the practice of palming off (or "passing off") Defendants' products as that of Plaintiff has misled purchasers as to the source of Defendants' product and has caused substantial harm to Plaintiff's business and reputation.

### COUNT 10: Breach of Covenant of Good Faith and Fair Dealing

**(against Defendant True To Life)**

89. Plaintiff incorporates the foregoing allegations herein as if restated in full.

90. As party to a contract, by way of the Agreement, Defendant True To Life had a duty implied by law to act fairly and in good faith.

- 14 -

91. The duty to act fairly and in good faith requires that neither party do anything that prevents the other party from receiving the benefits of their agreement.

92. True To Life breached this duty by distributing Plaintiff's Intellectual Property freely to the public, in violation of the Agreement.

93. True To Life further breached this duty by copying Plaintiff's Intellectual Property and utilizing that copied content to compete directly in the marketplace with Plaintiff.

94. Moreover, True To Life utilized Plaintiff's Intellectual Property, obtained during the course of the Agreement, to create knockoff products that are substantially similar to Plaintiff's own product. Defendant then used those knockoff products to again compete directly with Plaintiff.

95. Additionally, True To Life published Plaintiff's audio-visual Intellectual Property to Rumble.com, upon information and belief, with the intent to harm Plaintiff's credibility and marketability.

96. Defendant's multiple breaches of its duty to act in good faith and deal fairly have prevented Plaintiff from receiving the benefits of the Agreement and have caused harm to Plaintiff's business.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

    a. For equitable relief in the form of a permanent injunction against Defendants' use of any and all of My Baby Experts' Intellectual Property, including:

        (i) removing all Intellectual Property from places where published or otherwise used,

(ii) ceasing all use of Fact Sheets and/or other written content copied from the Intellectual Property, and

(iii) ceasing all use of videos that are substantially similar to the Intellectual Property;

b.     For direct, incidental, and consequential damages caused by Defendants' numerous violations of federal copyright law and trademark law under 17 U.S.C. §§ 501, 1202, and 15 U.S.C. § 1125;

c.     For direct, incidental, and consequential damages caused by Defendants' breach of contract, unfair competition, and breach of the covenant of good faith and fair dealing, in an amount to be proven at trial;

d.     For attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 505, as well as the Agreement and A.R.S. §§ 12-341, 12-341.01, and 12-1840;

e.     For interest on such fees and costs, at the maximum legal rate, until paid in full; and

f.     For such other and further relief as might be just and proper under the circumstances of this case.

DATED:  May 19, 2023.

> s/David Johns
> **ASPEY WATKINS & DIESEL, PLLC**
> *Attorneys for Plaintiff*