**Jaburg & Wilk, P.C.**
1850 N. Central Avenue, 12th Floor
Phoenix, AZ 85004
602.248.1000

Maria Crimi Speth (012574)
mcs@jaburgwilk.com
Aaron K. Haar (030814)
akh@jaburgwilk.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| New Parent World, LLC, a New Jersey for-profit corporation (d/b/a My Baby Experts),<br><br>         Plaintiff,<br><br>v.<br><br>True To Life Productions, Inc., an Arizona for-profit corporation; Heritage House '76, Incorporated, an Arizona for-profit corporation; Brandon Monahan, in his individual capacity,<br><br>         Defendants. | Case No. 3:23-cv-08089-DGC<br><br>**MOTION FOR PROTECTIVE ORDER RE PLAINTIFF'S SUBPOENA TO TEXAS PREGNANCY CARE NETWORK AND TEXAS DEPARTMENT OF HEALTH AND HUMAN SERVICES**<br><br>(**Expedited consideration requested**) |

Pursuant to Rule 26(c) and (g), Fed. R. Civ. P., Defendants (collectively, "Heritage House") hereby move for a protective order, requiring Plaintiff to withdraw its subpoena and to cease and desist from further contacting Texas Pregnancy Care Network (the "Network"), an organization that represents a network of pregnancy care providers with government agencies in Texas. The Network is a vital relationship for Heritage House's business because many of the pregnancy care providers who belong to the Network are Heritage House clients. The Network, however, has no relevant information concerning the claims or defenses in this lawsuit, the thrust of which are

allegations of copyright infringement (which copying Plaintiff has, notably, yet to identify in discovery). The subpoena and other efforts to contact the Network are a flagrant abuse of discovery—attempts to harass and hurt Heritage House's important relationships with no discernible connection to the claims or defenses asserted herein.

Plaintiff simultaneously served a subpoena on the Texas Department of Health and Human Services. The requested information similarly has no bearing on the claims or defenses asserted in this matter. While Heritage House does not have a direct relationship with the agency, many of its pregnancy center clients do. Therefore, Heritage House seeks an order requiring Plaintiff to withdraw this subpoena as well.

Accordingly, Heritage House respectfully requests a protective order to stop the harassing and oppressive conduct in discovery. Heritage House also requests the Court require Plaintiff to reimburse its fees in bringing this Motion and for any losses resulting from this abusive discovery.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      SALIENT FACTS**

Out of concern for this very scenario, Heritage House has resisted identifying the names of its customers in discovery. In subsequent briefing on the discovery dispute, Plaintiff New Parent World ("NPW") argued it was entitled to identify Heritage House's customers so it could take discovery from them, but NPW could not articulate what the clients might know or have in their possession that would be relevant to its claims.

The Court sustained Heritage House's objection: "Plaintiff asserts that it needs the information to find witnesses who can testify about the videos and written materials provided to them by Defendants, but does not explain the relevancy of such testimony in light of the fact that Defendants admit Plaintiff's content and the accused content were distributed to a wide audience." (Doc. 46 at 6:15-19) (internal citations omitted). The Court continued: "Plaintiff also states that it needs the customer identities to

establish infringement and damages, but does not explain how customer evidence will establish infringement (which presumably will be shown by comparing Plaintiff's works to the accused works) or damages (which presumably will be shown by evidence of revenues earned by Defendants from the allegedly infringing works)." (*Id*. at 6:19-24). "Because Plaintiff has not shown the relevancy of the requested information, Defendants' objection is sustained." (*Id*. at 624-25).

As for the present dispute, NPW happens to know the identity of the Texas Pregnancy Care Network (the "Network") because its former administrator, Roberta Buchanan, had, during the course of the parties' relationship, (1) requested citations to the studies referenced in NPW's videos; and (2) requested some changes to NPW's videos,[1] which requests Heritage House forwarded on to NPW—and which changes NPW made without issue. Nothing about these interactions make the Network and its members more relevant to this lawsuit than Heritage House's other clients. NPW has not alleged any wrongdoing relating to the requests (nor could they). The requests have nothing to do with any of the claims or defenses asserted in this action.

NPW's counsel recently began requesting information about Ms. Buchanan from Heritage House's counsel. Despite its limited relevance, Heritage House explained her role in good faith, in attempt to help NPW's counsel understand the document production.

NPW's counsel issued a subpoena to the Network (*see* doc. 55) and began demanding Ms. Buchanan's contact information so counsel could contact her directly. *See* **Exhibit A**.

---

[1] The changes were requested to comply with certain state requirements, since the pregnancy centers in the network often receive state funds. They included things like removing footage of a baby with a blanket in its crib and footage of a mother who was nursing while asleep (both of which raise SIDS concerns).

JABURG WILK

LAW FIRM

1    Heritage House's counsel raised concerns and requested that NPW's counsel

2    explain the relevance of the Network and its administrator in light of the important and

3    sensitive relationship Heritage House has with the Network. *Id*. NPW's counsel simply

4    argued NPW needed the information because it did not have it. *Id*. When continually

5    pressed as to its relevance (specifically of contact information for Ms. Buchanan),

6    NPW's counsel said relevance does not matter because she was not seeking

7    documents, she just wanted to call Ms. Buchanan to discuss the case. *Id*.

8    Heritage House then repeatedly asked NPW to hold off serving the subpoena

9    until the Court could rule on its forthcoming motion (this Motion). *See* **Exhibit B**.

10   Heritage House emphasized the sensitive nature and importance of the relationship

11   with the Network and explained that the lack of relevance appeared to be an attempt

12   to inflict harm on Heritage House with no reasonable connection to the case. *Id*.

13   Heritage House expressed concerns that the only apparent purpose for a call to the

14   Network would be so NPW's counsel could introduce herself as the attorney

15   representing a party suing Heritage House for copyright infringement. *Id*.

16   Despite Heritage House's plea, NPW refused. "We understand your position.

17   We disagree. We are moving forward with service, if it has not occurred already." *Id.*

18   NPW's Notice of Intent to Serve Subpoenas included two subpoenas, one to the

19   Network, the other to the Texas Department of Health and Human Services. (Doc. 55).

20   Neither nonparty has information relevant to NPW's claims. While Heritage House is

21   more concerned about its direct relationship with the Network, its clients have direct

22   relationships with the Texas Department of Health and Human Services. And there is

23   no reasonable basis for NPW to demand any of these documents.

24   The subpoenas sought the same 11 categories of documents, which read more

25   like a comprehensive set of requests for production served on a party to the litigation

26   (and seeks more than five years of records):

27

28                                                    4

1.      Any and all agreements between the Network [or THHS, depending on the subpoena] and any Defendant, including but not limited to licensing agreements for or related to breastfeeding or newborn care Content from January 1, 2019 to present.

2.      All subcontractor agreements with any Defendant involving the distribution or use of any breastfeeding or newborn care Content of any kind from January 1, 2019 to present.

3.      All communications between the Network and any Defendant related to breastfeeding or newborn care Content, including but not limited to emails, letters, and meeting minutes from January 1, 2019 to present.

4.      All communications between the Network and any other entity or individual involving breastfeeding or newborn care Content acting on behalf of any Defendant from January 1, 2019 to present.

5.      All communications related to requests for edits or clarifications on breastfeeding or newborn care Content from the Network to any Defendant from January 1, 2019 to present.

6.      Documents and communications related to any payments made to any Defendant for the licensing, distribution, or use of breastfeeding or newborn care Content from January 1, 2019 to present.

7.      Documents and communications of any payments made to any Defendant related to any services provided by any Defendant to the Network related to breastfeeding or newborn care Content from January 1, 2019 to present.

8.      Any logs or records showing access to or distribution of breastfeeding or newborn care Content provided by any Defendant to, or on behalf of, the Network from January 1, 2019 to present.

23427-23427-00001\AKH\JJB\6136842v2

1      9.      Any logs or records showing edits or clarifications made on any
2   breastfeeding or newborn care Content provided by any Defendant to the Network
3   from January 1, 2019 to present.

4      10.      Copies of all educational materials (e.g., videos, written materials)
5   provided by any Defendant relating to breastfeeding or newborn care Content provided
6   to, or distributed by, the Network or any of its subcontractors from January 1, 2019 to
7   present.

8      11.      Copies of any certifications, licenses, or approvals provided by the
9   Network to any Defendant relating to breastfeeding or newborn care Content from
10  January 1, 2019 to present.

11     (Doc. 55-1 at 8-9, 16-17).

12     NPW seeks to create a veil of relevance by adding "related to breastfeeding or
13  newborn care," but the responsive information would have no bearing on the claims or
14  defenses asserted in the case. The requests do not even amount to a fishing expedition
15  because there is nothing in these nonparties' possession that speak to any of the
16  elements at issue. Several of the requests appear intended to uncover the identity of
17  Heritage House's customers. Despite the Court's prior ruling that NPW could not
18  compel Heritage House to identify its customers, NPW now seeks to impose that
19  burden on nonparties.

20  **II.    A PROTECTIVE ORDER IS APPROPRIATE.**

21     Under Rule 26(c), Fed. R. Civ. P., the Court may, for good cause, enter a
22  protective order "to protect a party or person from annoyance, embarrassment,
23  oppression, or undue burden or expense," which order may include, in relevant part,
24  forbidding certain discovery and forbidding inquiry into certain matters. Fed. R. Civ.
25  P. 26(c)(1)(A), (D). The Rule provides for shifting of expenses and other sanctions as
26  appropriate on a successful motion.  Rule 26(c)(3); Rule 37(a)(5).

27
28                                      6

1    NPW's subpoenas to THHS and the Network, and its efforts to contact the

2    Network's administrator have no apparent connection to the claims or defenses

3    asserted in this action. NPW's own counsel even argued relevancy did not matter when

4    pressed on the relevance of the inquiry. *See* Exhibit A. If there is no relevance to the

5    inquiry, then the only possible purpose of the inquiry is to injure Heritage House's

6    important relationship with the Network and its clients. This is not an appropriate use

7    of discovery.

8        Accordingly, Heritage House requests entry of a protective order requiring

9    NPW to withdraw its subpoenas and to refrain from contacting the Network and

10   THHS. Plaintiff further requests reimbursement of its fees incurred in bringing this

11   Motion and for any losses resulting from this abuse of the discovery rules.

12   **III.    THE SUBPOENA IS A VIOLATION OF RULE 26(G).**

13       Rule 26(g), Fed. R. Civ. P., requires all discovery requests to be signed by at

14   least one attorney of record, which signature "certifies that to the best of the person's

15   knowledge, information, and belief, formed after a reasonable inquiry," the discovery

16   request is "(i) consistent with these rules and warranted by existing law or by a

17   nonfrivolous argument for extending, modifying, or reversing existing law, or for

18   establishing new law; (ii) not interposed for any improper purpose, such as to harass,

19   cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither

20   unreasonable nor unduly burdensome . . . ." Rule 26(g)(1)(B).

21       The Rule provides that "[i]f a certification violates this rule without substantial

22   justification, the court, on motion or on its own, must impose an appropriate sanction

23   on the signer, the party on whose behalf the signer was acting, or both." Rule 26(g)(3)

24   ("The sanction may include an order to pay the reasonable expenses, including

25   attorney's fees, caused by the violation.").

26       The Notice of Intent to Serve Subpoena Duces Tecum demonstrates NPW's

27   counsel signed both the Notice and the subject subpoenas. (Doc. 55 at 1; Doc. 55-1 at

28

7

2, 10). The certification on the subject subpoenas violated Rule 26(g) because the discovery is inconsistent with the discovery rules, interposed for an improper purpose, and is unreasonable and unduly burdensome.

Despite Rule 26(b) expressly limiting the scope of discovery to "any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case," NPW's counsel issued and served the subject subpoenas while simultaneously arguing relevancy does not matter. When counsel for Heritage House raised concerns about the potential damage caused by the subpoena and requested that NPW hold off serving it until the Court could weigh-in, NPW's counsel refused and charged ahead with full knowledge that the irrelevant requests could harm Heritage House—not to mention the substantial and unjustified burden on the nonparties from the subpoenas' request for five years' worth of records in 11 discrete categories of documents. (*See* Doc. 55-1 at 8-9, 16-17).

Accordingly, the subpoenas evince a violation of Rule 26(g). This violation independently justifies an order requiring NPW to reimburse the fees incurred in bringing this Motion and for any losses resulting from this discovery.

## IV. CONCLUSION

Due to the foregoing, Defendants respectfully request the Court enter a protective order requiring Plaintiff to withdraw its subpoenas (doc. 55) and refrain from further contacting the Texas Pregnancy Care Network and the Texas Department of Health and Human Services. Defendants also request the Court order Plaintiff to reimburse Defendants' fees incurred in bringing this Motion and for any losses resulting from damages that might result from the discovery.

.   .   .

.   .   .

.   .   .

8

Date: August 2, 2024

Respectfully submitted,

/s/ Aaron K. Haar
Maria Crimi Speth
Aaron K. Haar
**Jaburg & Wilk, P.C.**
1850 N. Central Avenue, 12th Floor
Phoenix, AZ 85004
*Attorneys for Defendants True to Life
Productions, Inc., Heritage House '76,
Incorporated and Brandon Monahan*

### *Certificate Of Good Faith Consultation*

I hereby certify that the parties consulted regarding the subject subpoenas and inquiries variously on July 29 and July 30, 2024 and were unable to resolve the matters addressed herein. I believe further consultation would be futile.

/s/ Aaron K. Haar

### *Certificate of Service*

I hereby certify that on the 2d day of August, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Krystle Delgado
Delgado Entertainment Law, PLLC
3295 North Drinkwater Blvd., Suite 9
Scottsdale, Arizona 85251-6437
Telephone: (480) 248-0657
Facsimile (480) 718-8759
krystle@delgadoentertainmentlaw.com
*Attorneys for Plaintiff*

/s/ Joy Brown

23427-23427-00001\AKH\JJB\6136842v2

JABURG WILK
LAW FIRM